IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LINDA HONG, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>CLUBCORP USA, INC.,<br><br>      Defendant. | Case No. _____<br><br>**COMPLAINT- CLASS ACTION**<br><br>JURY TRIAL DEMANDED |

  Plaintiff Linda Hong ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant ClubCorp USA, Inc. ("ClubCorp" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## FACTS COMMON TO ALL CLAIMS

  1. This is a putative class action lawsuit on behalf of all similarly situated individuals who paid membership fees for access to Defendant's private golf, country, city, sports, and stadium clubs, and who, because of Defendant's response to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic, lost the benefit of the membership for which they paid, and/or the services for which their fees were paid, without having their membership fees refunded to them. As discussed further below, by continuing to charge monthly membership

dues while Defendant's private clubs remain closed, Defendant is unlawfully taking advantage of its customers in the midst of the greatest public health and economic crisis in living memory.

2.  Defendant owns and operates more than 200 private clubs nationwide, including 19 private clubs located in California alone and 39 in Texas, making it the "largest owner and operator of … [private] clubs in markets all across the country."[1]  In fact, Defendant brags that it is "The World Leader in Private Clubs."



3.  Defendant offers "a variety of memberships for families, active professionals, golf and tennis enthusiasts, business and community leaders[.]"  Membership to one of Defendant's private clubs provides members with "first-class amenities and benefits at [their] Home Club[s,]" in addition to "access to the ClubCorp Network of … alliance clubs, and special offerings at more than 1,000 hotels, resorts[,] and entertainment venues[.]"[2]

4.  To use Defendant's private clubs, customers must sign up for a month-to-month membership, provide Defendant with their credit card or debit card information, and then agree to pay a one-time initiation fee along with recurring monthly membership fees in exchange for access to Defendant's private clubs.  Defendant then automatically charges its customers' credit or debit cards as payments are due on a monthly basis.

5.  Defendant's private clubs are, for the most part, currently inaccessible and non-operational.  In or around March of 2020, Defendant announced that it was closing its private clubs in response to the coronavirus outbreak.  However, unlike other major membership-based

---

[1] https://www.clubcorp.com/Who-We-Are (last accessed May 13, 2020).

[2] https://www.clubcorp.com/Membership (last accessed May 13, 2020).

chains, Defendant has refused to stop charging its members despite having closed its facilities.[3]

Instead, Defendant outrageously continues to automatically charge monthly membership fees – at full price – to members' credit or debit cards, despite barring access to its facilities during the COVID-19 pandemic.

6. The scope of this conduct cannot be overlooked. As of December 31, 2019, Defendant reported having more than 430,000 members[4] who pay monthly membership dues, which vary in price, ranging from approximately $120.00 for social memberships to over $800.00 for certain golf club memberships.[5] Monthly membership dues are paid for one purpose and one purpose only – for the right to access and use ClubCorp facilities. By contract and by law, Defendant charges customers membership dues strictly *in exchange for access to Defendant's private clubs*. Now, however, Defendant is charging its customers full price while denying customers all access to Defendant's private clubs nationwide. Moreover, despite failing to provide the services agreed upon in its contracts with members, Defendant has refused to issue refunds for such charges, exacerbating the already enormous financial strain currently plaguing

---

[3] For instance, numerous gyms have, on their own accord, announced that membership charges will be suspended during Coronavirus-related closures. *See, e.g.*, *Equinox* https://www.equinox.com/covid19update?icmp=banner-covid ("Your membership will be put on freeze at no cost as of the day the club closed. No further action is required to freeze.") (last accessed May 13, 2020); *Blink Fitness* https://www.blog.blinkfitness.com/blink-fitness-gym-updates ("What happens to my membership if my gym is closed? You will not be billed during the time that your Blink gym is closed. Your membership will be put on freeze until we re-open. No action is needed on your part to start the freeze.") (last accessed May 13, 2020); *Barry's BootCamp* https://www.barrys.com/covid-19/ ("For any existing reservations, we will return these classes to your account. Additionally, all class packages and memberships will be adjusted to reflect the duration of these closures.") (last accessed May 13, 2020).

[4] https://www.clubcorp.com/Who-We-Are/History-Facts (last accessed May 13, 2020).

[5] https://www.clubcorp.com/content/download/742266/7860466/version/1/file/CVCC2015Membership-Classifications-Flyer3.pdf (last accessed May 13, 2020).

people across the United States due to "shelter-in-place" regulations, business closures, abrupt mass layoffs, and the recent market collapse.

7. Defendant's steadfast refusal to refund any portion of wrongfully collected membership fees is central to its business model. Since ClubCorp was founded in 1957, Defendant has relied on membership fees to fund its operations and expansion through development and acquisitions. As ClubCorp founder Robert H. Dedman, Sr. explained in his autobiography, "[t]o be a good entrepreneur, you have to know how to intelligently use what we call OPM, 'Other People's Money….' If we didn't sell memberships, we couldn't meet our construction payments on the subsequent phases."[6]

8. Indeed, Defendant has expressly acknowledged that refunding membership fees *en masse* would have a material negative impact on its operations.[7] In particular, Defendant's current state – marked by its "high financial leverage with debt[,] … negative free cash flow, and … exposure to US quarantines and discretionary consumer spending" – has rendered it "vulnerable to shifts in market sentiment in these unprecedented operating conditions[.]"[8]

---

[6] *See King of Clubs: Grow Rich in More Than Money* (Taylor Publishing Company, 1999), Dedman Robert H. ("King of Clubs"), p. 172. In fact, Mr. Dedman joked about ClubCorp's successful use of OPM in his autobiography, where he discussed the "developer's creed:" "A dollar borrowed is a dollar earned. A dollar refinanced is a dollar saved. And a dollar paid back is a dollar lost forever." *Id.* at p. 86.

[7] *See* Form 10-K for ClubCorp Holdings, Inc., filed with the SEC in 2016, p. 18 ("***We could be required to make material cash outlays in future periods if the number of initiation deposit refund requests we receive materially increases***[.] … If the number of refunds dramatically increases in the future, our financial condition could suffer and the funding requirement for such refunds could strain our cash on hand or otherwise force us to reduce or delay capital expenditures, reduce or eliminate planned dividend payments, sell assets or operations or seek additional capital in order to raise the cash necessary to make such refunds.") (emphasis in original), *available at* https://www.sec.gov/Archives/edgar/data/1577095/000104746913007531/a2215780zs-1.htm#da40401_risk_factors (last accessed May 13, 2020).

[8] *See* https://www.moodys.com/research/Moodys-downgrades-ClubCorp-to-Caa1-outlook-negative--PR_422089?cid= (last accessed May 13, 2020).

Therefore, instead of instituting responsible financial transaction policies, Defendant has decided to attempt to shift its financial losses onto its thousands of innocent members by continuing to charge customers for their monthly membership without providing any of the benefits of membership. In doing so, Defendant well exceeds the scope of its contractual authority to initiate credit or debit entries to members' bank accounts.

9. By charging post-closure membership fees to customers' credit and debit cards, Defendant has breached its agreements with Plaintiff and members of the Class, who suffered monetary losses in the monthly amounts charged. In this regard, Defendant's conduct is the height of corporate greed, and it underscores Defendant's inclination to place profits before people.

10. For the foregoing reasons, Plaintiff brings this action individually and on behalf of those similarly situation for: (i) violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (ii) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (iii) violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et *seq.*; (iv) breach of express warranty; (v) unjust enrichment/restitution; (vi) money had and received; (vii) conversion; and (viii) breach of contract.

## THE PARTIES

11. Plaintiff Linda Hong is a citizen of California, residing in San Jose, California. On or about November 2019, Ms. Hong entered into a month-to-month membership agreement with Defendant for access to Defendant's private clubs. Specifically, Ms. Hong is a member at Defendant's Silicon Valley Capital Club located in San Jose, California, paying "Home Club Dues" of $194.42 per month on a month-to-month basis. During the first week of March 2020,

Defendant closed its private clubs, including the Silicon Valley Capital Club that Ms. Hong attended, due to the COVID-19 pandemic. Yet, on or about April 15, 2020, Defendant nonetheless charged Plaintiff's debit card in the full amount of her monthly membership fee – $194.42 – even though Plaintiff does not have access to any of Defendant's private clubs. Further, Defendant has not refunded Plaintiff any part of her monthly fee for the time in which Defendant's private clubs have been closed. Plaintiff signed up for Defendant's month-to-month membership with the belief and on the basis that she would have access to Defendant's private clubs during the time in which she was charged for her monthly membership. Had Plaintiff known that she would not have access to Defendant's private clubs, she would not have paid for the membership or would not have paid for it on the same terms. Plaintiff continues to face imminent harm, as Defendant continues charging its customers monthly fees while all of its private clubs remain closed.

12. Defendant ClubCorp USA, Inc., is a Delaware corporation with its headquarters and principal place of business in Dallas, Texas. Defendant is the operator of over 200 private clubs nationwide, including at least 19 private clubs in California and 39 private clubs in Texas.

13. Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of

$5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, is a citizen of a state different from Defendant.

15. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because Defendant is a citizen of Texas and its principal place of business is located in this District, a substantial part of the events giving rise to Plaintiff's claims took place within this District, and documents and witnesses are likely to be located within this District. Moreover, Defendant distributed, advertised, and sold memberships to its private clubs, which is the subject of the present complaint, in this District.

## CLASS ACTION ALLEGATIONS

16. **Class Definition**: Plaintiff brings this action pursuant to Rule 23(a) of the Federal Rules of Civil Procedure on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All persons in the United States who, during the period in which Defendant's private clubs were closed, up to and including the date of final judgment in this action, incurred fee(s) in connection with Defendant's membership plan offerings.

17. Plaintiff also seeks to represent a subclass defined as all members of the Class who are members at Defendant's private clubs in California (the "California Subclass" or the "Subclass").

18. Specifically excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

19. Plaintiff reserves the right to amend the definitions of the Class and Subclass if discovery or further investigation reveals that they should be expanded or otherwise modified.

20. Plaintiff is a member of the Class and California Subclass she seeks to represent.

21. **Numerosity.** Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, the Class comprises at least thousands of customers nationwide who were charged membership fees while Defendant's private clubs were closed. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

22. **Commonality and Predominance**. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to, whether Defendant has breached its contract with its customers and whether its actions are unlawful.

23. **Typicality.** The claims of Plaintiff Hong are typical of the claims of the Class in that Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct in that Defendant unlawfully debited or credited membership fee(s) to Plaintiff's and Class members' bank accounts without providing Plaintiff and the Class the access to Defendant's private clubs for which they paid, depriving Plaintiff and members of the Class of the benefit of the bargain.

24. **Adequacy**. Plaintiff will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests, and Plaintiff has retained counsel that have considerable experience and success in prosecuting complex class-actions and consumer-protection cases.

25. **Superiority**. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions

of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

26. Defendant has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

27. Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Class and will likely retain the benefits of its wrongdoing.

28. Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

## COUNT I
### Violations of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*

29. Plaintiff hereby re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs of this complaint.

30. Plaintiff brings this claim individually and on behalf of members of the proposed California Subclass against Defendant.

31. Plaintiff and the members of the California Subclass are "consumers" within the meaning of Cal. Civil Code § 1761(d) in that Plaintiff and the California Subclass sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

32. Access to Defendant's private clubs, which Plaintiff and the California Subclass members purchased from Defendant, is a "service" within the meaning of Cal. Civ. Code §

1761(b). The purchases by Plaintiff and the California Subclass are "transactions" within the meaning of Cal. Civil Code § 1761(e).

33. Defendant's actions, representations, and conduct have violated, and continue to violate California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, because they extend to transactions that were intended to result in, or which have resulted in, the sale of services to consumers.

34. The acts and practices of Defendant as described above were intended to deceive Plaintiff and the California Subclass as described herein, and have resulted, and will result, in damages to Plaintiff and the California Subclass. These actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendant's acts and practices constitute representations or omissions deceiving that its private clubs and the memberships to those clubs have characteristics, uses, and/or benefits, which they do not, in violation of Cal. Civil Code § 1770(a)(5); (b) Defendant's acts and practices constitute unfair methods of competition and unfair or fraudulent acts or practices, in that Defendant misrepresents the particular standard, quality or grade of its services, in violation of Cal. Civil Code § 1770(a)(7); and (c) Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9).

35. Plaintiff and the California Subclass acted reasonably when they purchased their memberships to Defendant's private clubs on the belief that Defendant's representations were true and lawful.

36. Plaintiff and the California Subclass suffered economic injury as a direct result of Defendant's misrepresentations and/or omissions because: (a) they would not have purchased or paid for Defendant's private club memberships absent Defendant's representations and omission

10

of a warning that it would continue charging customers' credit and/or debit cards even if Defendant's facilities are closed; (b) they would not have purchased private club memberships on the same terms absent Defendant's representations and omissions; (c) they paid a price premium for Defendant's private club memberships based on Defendant's misrepresentations and omissions; and (d) Defendant's private club memberships did not have the characteristics, benefits, or quantities as promised.

37. Plaintiff, on behalf of herself and all other members the California Subclass, seeks injunctive and equitable relief prohibiting Defendant from continuing its unlawful practices in violation of the CLRA pursuant to Cal. Civ. Code § 1780(a). Additionally, Plaintiff has mailed an appropriate demand letter consistent with California Civil Code § 1782(a). If Defendant fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend her complaint to include a request for damages as permitted by Civil Code § 1782(d).

## COUNT II
### Violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

38. Plaintiff hereby re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs of this complaint.

39. Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

40. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act[.]" The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring

such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

41. Defendant's advertising that customers would have access to Defendant's private clubs upon paying a membership fee is false and misleading to a reasonable consumer, including Plaintiff, because Defendant in fact closed its private clubs while continuing to charge its customers the full price of membership.

42. Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating the CLRA, the FAL, and any other applicable law as described herein.

43. Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's advertising and its charging of membership fees while its private clubs are closed is of no benefit to consumers.

44. Defendant violated the fraudulent prong of the UCL by misleading Plaintiff and the California Subclass to believe that they would only be charged fees when they would have access to Defendant's private clubs.

45. Plaintiff and the California Subclass acted reasonably when they signed up for memberships to Defendant's private clubs based on the belief that they would only be charged fees when Defendant's private clubs were open and accessible.

46. Plaintiff and the California Subclass lost money or property as a result of Defendant's UCL violations because: (a) they would not have purchased or paid for Defendant's private club memberships absent Defendant's representations and omission of a warning that it would continue charging customers' credit and/or debit cards while all of Defendant's facilities

12

are closed; (b) they would not have purchased private club memberships on the same terms absent Defendant's representations and omissions; (c) they paid a price premium for Defendant's private club memberships based on Defendant's misrepresentations and omissions; and (d) Defendant's private club memberships did not have the characteristics, benefits, or quantities as promised.

**COUNT III**
**Violations of California's False Advertising Law,**
**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**

47. Plaintiff hereby re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs of this complaint.

48. Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

49. California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

50. Defendant engaged in a scheme of charging customers full monthly membership fee while all or nearly all of its private clubs were closed. Defendant's advertising and marketing of its private clubs misrepresented and/or omitted the true content and nature of Defendant's services. Defendant's advertisements and inducements were made in and originated from California and come within the definition of advertising as contained in the FAL in that the

promotional materials were intended as inducements to purchase private club memberships, and are statements disseminated by Defendant to Plaintiff and California Subclass members. Defendant knew that these statements were unauthorized, inaccurate, and misleading.

51. Defendant's advertising that its customers would have access to its private clubs upon paying a membership fee is false and misleading to a reasonable consumer, including Plaintiff, because Defendant in fact closed all of its private clubs while continuing to charge its customers the full price of membership.

52. Defendant violated the FAL by misleading Plaintiff and the California Subclass to believe that they would be charged fees only when they have access to Defendant's private clubs.

53. Defendant knew or should have known, through the exercise of reasonable care that its advertising of its private clubs as being accessible upon customers' payment of a one-time initiation fee and recurring membership fees is false and misleading.  Further, Defendant knew or should have known that it was breaching its contracts with its customers and fraudulently charging fees when it continued charging fees while all of its private clubs were closed.

54. Plaintiff and the California Subclass lost money or property as a result of Defendant's FAL violation because:  (a) they would not have purchased or paid for Defendant's private club memberships absent Defendant's representations and omission of a warning that it would continue charging customers' credit and/or debit cards while all of Defendant's facilities are closed; (b) they would not have purchased private club memberships on the same terms absent Defendant's representations and omissions; (c) they paid a price premium for Defendant's private club memberships based on Defendant's misrepresentations and omissions; and (d)

Defendant's private club memberships did not have the characteristics, benefits, or quantities as promised.

## COUNT IV
### Breach of Express Warranty

55.     Plaintiff hereby re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs of this complaint.

56.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.  Plaintiff also brings this claim individually and on behalf of members of the proposed California Subclass against Defendant.

57.     In connection with the sale of private club memberships, Defendant issues an express warranty that Defendant's private clubs are accessible to members during standard business hours (excluding select holidays) upon payment of a one-time initiation fee and recurring membership fees.

58.     Defendant's affirmation of fact and promise in Defendant's marketing and signage became part of the basis of the bargain between Defendant and Plaintiff and Class members, thereby creating express warranties that the services would conform to Defendant's affirmation of fact, representations, promise, and description.

59.     Defendant breached its express warranty because Defendant's private clubs are not, in fact, accessible during its standard business hours or upon customers' payment of a one-time initiation fee and recurring membership fees.  In fact, Defendant charges its customers the full amount of its monthly fees while all or nearly all of its private clubs are closed.

60.     Plaintiff and the Class members were injured as a direct and proximate result of Defendant's breach because:  (a) they would not have purchased or paid for Defendant's private

club memberships absent Defendant's representations and omission of a warning that it would continue charging customers' credit and/or debit cards while all of Defendant's facilities are closed; (b) they would not have purchased private club memberships on the same terms absent Defendant's representations and omissions; (c) they paid a price premium for Defendant's private club memberships based on Defendant's misrepresentations and omissions; and (d) Defendant's private club memberships did not have the characteristics, benefits, or quantities as promised.

## COUNT V
### Unjust Enrichment/Restitution

61. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

62. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant. Plaintiff also brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

63. Plaintiff and members of the Class conferred benefits on Defendant by paying, and being charged, membership fees while Defendant's private clubs were, and remain, closed and inaccessible.

64. Defendant has knowledge of such benefits.

65. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' membership fees. Retention of those moneys under these circumstances is unjust and inequitable because Defendant is charging its customers full price while all or nearly all of its private clubs remain closed. These misrepresentations and charges

caused injuries to Plaintiff and members of the Class because they would not have paid Defendant's membership fees had the true facts been known.

66. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Class for their unjust enrichment, as ordered by the Court.

## COUNT VI
### Money Had and Received

67. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

68. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant. Plaintiff also brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

69. Defendant received money in the form of membership fees that were intended to be used for the benefit of Plaintiff and the Class, those membership fees were not used for the benefit of Plaintiff and the Class, and Defendant has not given back or refunded the wrongfully obtained money and membership fees to Plaintiff and the Class.

70. Defendant obtained roughly money in the form of membership fees that was intended to be used to provide Plaintiff and the Class with access to Defendant's private clubs. However, Defendant has retained all of the membership fees while all or nearly all of its private clubs were, and remain, closed.

## COUNT VII
### Conversion

71. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

72. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant. Plaintiff also brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

73. Plaintiff and members of the Class had a right to retain their membership fees while Defendant's private clubs were, and remain, closed; Defendant intentionally charged Plaintiff's and Class members' debit and credit cards in the full amount of the monthly membership fees while Defendant's private clubs were closed; Plaintiff and Class members did not consent to Defendant's charging of their debit and credit cards while Defendant's private clubs are closed; Plaintiff and Class members were harmed through Defendant's charging of their debit and credit cards; Defendant's conduct was a substantial factor in causing Plaintiff and Class members' harm.

## COUNT VIII
### Breach of Contract

74. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

75. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant. Plaintiff also brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

76. Defendant entered into contracts with Plaintiff and Class members to provide access to private club facilities in exchange for the payment of membership fees. Defendant has breached these contracts by continuing to charge Plaintiff and Class members' debit and credit cards while its private clubs remain closed.

77. Plaintiff and Class members have suffered an injury through the payment of membership fees while not having access to Defendant's private clubs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

    a.    For an order certifying the Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Class members;

    b.    For an order declaring the Defendant's conduct violates the statutes referenced herein;

    c.    For an order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

    d.    For statutory, compensatory, and punitive damages in amounts to be determined by the Court and/or jury;

    e.    For prejudgment interest on all amounts awarded;

    f.    For an order of restitution and all other forms of equitable monetary relief;

    g.    For injunctive relief as pleaded or as the Court may deem proper;

    h.    For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit;

    i.    Damages, restitution, and/or disgorgement in an amount to be determined at trial; and

    j.    For such other and further relief as the Court may deem proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: May 19, 2020

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ Yeremey Krivoshey
Yeremey Krivoshey (*Pro Hac* Application filed)
CA State Bar No. 295032
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
ykrivoshey@bursor.com

**ATTORNEY-IN-CHARGE FOR PLAINTIFF LINDA HONG, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED**

**Of Counsel:**

L. Timothy Fisher (*Pro Hac* Application Filed)
CA State Bar No. 191626
Bursor & Fisher, P.A.
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
ltfisher@bursor.com

Michael K. Oldham
State Bar No. 00798405
oldham@reynoldsfrizzell.com
Brandon T. Allen
State Bar No. 24009353
allen@reynoldsfrizzell.com
Reynolds Frizzell LLP
1100 Louisiana, Suite 3500
Houston, Texas 77002
Telephone: (713) 485-7200
Facsimile: (713) 485-7250